UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| VIOLET BORDNER ) <br> Plaintiff ) <br> ) <br> ) <br> v. ) <br> AMERICAN ADJUSTMENT BUREAU, INC. ) <br> AND NWCT EMERGENCY MEDICINE, P.C. ) <br>     Defendants ) <br> _____) | CIVIL ACTION <br><br> TRIAL BY JURY <br> DEMANDED <br><br><br><br><br> DECEMBER 13, 2013 |

## COMPLAINT

1. Violet Bordner brings this suit against American Adjustment Bureau, Inc. ("AAB"), a debt collector, on account of its conduct in violation of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.*, ("FDCPA"). Plaintiff also includes pendent state law claims against NWCT Emergency Medicine, P.C.'s ("NWCT"), violations of the Connecticut Creditors' Collection Practices Act, Conn. Gen. Stat. §§ 36a-645 *et seq.* ("CCPA") and CUTPA with respect to the same alleged debt.

2. Violet Bordner is a natural person residing in Thomaston, Connecticut.

3. Defendant NWCT is a Connecticut Professional Corporation with headquarters in Torrington, Connecticut.

4. The defendant AAB is a Connecticut Corporation headquartered in Waterbury and is engaged in the collection of consumer debts. The Defendant uses instrumentalities of interstate commerce in the collection of debts.

5. Jurisdiction in this Court is proper pursuant to 15 U.S.C. § 1692k(d), 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

6. This Court has jurisdiction over the defendants and venue in this Court is proper because the defendants are incorporated under the laws of this state, acts complained of occurred in this state and because the Plaintiff is a resident of Connecticut.

7. On or around December 30, 2011, Plaintiff received emergency medical services at the Charlotte Hungerford Hospital in Torrington, Connecticut.

8. As a result of the December 30, 2011 services, Plaintiff became indebted to NWCT in connection with services performed ("the Debt").

9. On or around February 24, 2012, Plaintiff made payment via her health savings account to NWCT for an amount that she believes and accordingly alleges was for the full amount of the Debt.

10. NWCT received payment and retained the benefit of said payment.

11. Prior to December of 2012, on several occasions, NWCT sent Plaintiff notices seeking payment of the Debt. In response to each communication, Plaintiff informed NWCT that the Debt had been paid and provided evidence of such payment from her health savings account carrier, Cigna.

12. On or around December 6, 2012, NWCT sent a notice to Plaintiff seeking payment of the Debt.

13. Plaintiff contacted NWCT and asserted that the Debt had been paid and referenced her earlier exchanges with Cigna and NWCT.

14. NWCT denied knowledge of the prior communications and denied that the Debt had been paid.

15. In response, on or around December 11, 2012, Plaintiff contacted Cigna and spoke with a representative who identified herself as Nicole.

16. Nicole confirmed that the Debt had been paid, and Plaintiff forwarded this information to NWCT.

17. On or around January 21, 2013, Plaintiff received a notice from NWCT seeking payment on the Debt.

18. In response, on or around January 30, 2013, Plaintiff contacted Cigna and again requested verification that the Debt had been paid.

19. Cigna confirmed that the Debt had been paid.

20. On or around February 1, 2013, Plaintiff contacted NWCT and spoke with a representative who identified herself as Kathy.

21. Plaintiff informed Kathy of the information provided by Cigna.

22. Kathy denied knowledge of Plaintiff's prior communications with NWCT and indicated that she would update the account to reflect payment.

23. On or around May 2013, Plaintiff received a notice from NWCT seeking payment on the Debt.

24. Following receipt of that notice, Plaintiff contacted Cigna and spoke with a representative who identified herself as Krystal.

25. Krystal confirmed that the Debt had been paid.

26. Plaintiff arranged for a conference call between Cigna, NWCT and Plaintiff, which was held in or around May 2013.

27. During that call, the Cigna representative informed the NWCT representative that the Debt had been paid.

28. The Cigna representative informed NWCT that it would fax proof of payment during the call ("the Cigna Fax").

29. The NWCT representative acknowledged receipt of the Cigna Fax during the call and admitted that it evidenced payment.

30. The NWCT representative informed Plaintiff and the Cigna representative that Plaintiff's account would be updated to reflect the payment.

31. Following this communication, in or around May or June 2013, Plaintiff received a notice from NWCT seeking payment of the Debt.  In or around August 2013, despite having been advised that Plaintiff paid the Debt, NWCT sent the Debt to AAB for collection.

32. Plaintiff has a medical condition in which she suffers from severe migraines.

33. Plaintiff's condition is worsened by situations of high stress.

34. As a result of the conduct of NWCT, Plaintiff suffered severe stress and, as a result, increased number and severity of migraines.

35. NWCT violated the Connecticut Creditors Collections Practices Act, Conn. Gen. Stat 36a-645 *et seq.* ("CCPA") by engaging in abusive, harassing, fraudulent, deceptive or misleading representations, devices or practices in an attempt to collect the Debt.  Specifically,

    a. NWCT engaged in conduct the natural consequence of which to a reasonable person was to harass or abuse Plaintiff in connection with the collection of the Debt, in violation of Conn. Agencies Regs. § 36a-647-3.

    b. NWCT falsely represented the character, amount and/or legal status of the Debt, in violation of Conn. Agencies Regs. § 36a-647-6(2)(A).

36. For NWCT's violations of CCPA, NWCT is liable to Plaintiff for her actual damages, statutory damages of up to $1,000, plus attorney's fees and costs pursuant to Conn. Gen. Stat. § 36a-648(a).

37. NWCT has also engaged in unfair acts and practices in trade or commerce in violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a *et seq.*, in connection with the transaction as follows:

   a. It engaged in unfair and deceptive acts when it engaged in actions in violations of the CCPA.

   b. It engaged in unfair and deceptive acts when it failed to adequately record and monitor Plaintiff's payment history and prior communications with Plaintiff.

   c. It engaged in unfair and deceptive acts when its representatives indicated to Plaintiff that it would correct her account history when, in fact, NWCT had no intention of doing so.

38. Its actions offend public policy as it has been established by statutes, the common law, or otherwise; were immoral, unethical, oppressive, or unscrupulous and are of a type that causes substantial injury to consumers, especially Plaintiff.

39. As a result of NWCT's conduct, Plaintiff has suffered ascertainable losses including, but not limited to, credit harm, lost time, costs associated with the transmission of materials by fax, costs associated with sending a written dispute letter to AAB and expenses associated with her exacerbated medical condition.

40. For NWCT's violations of CUTPA, Plaintiffs is entitled to her damages and, in the discretion of the court, attorney's fees and costs pursuant to Conn. Gen. Stat. § 42-110g.

41. At the time that NWCT sent the Debt to AAB for collection, it considered the Debt to be in default.

42. On or around mid August 9, 2013, AAB, doing business as American Medical Billing, sent Plaintiff a notice ("the Notice") regarding the Debt. A true and correct copy of the Notice is attached hereto as Exhibit A.

43. In an attempt to collect the Debt, the Notice stated "If you do not have an insurance plan to cover these charges, please contact our office to establish a payment plan or to pay your bill."

44. Additionally, the reverse side of the Notice contained an "Electronic Check Payment Information" section where Plaintiff could fill in her credit card information in order to make a payment toward the Debt.

45. The Notice was AAB's first written communication with Plaintiff regarding the Debt.

46. The Notice failed to state that, unless Plaintiff, within thirty days after receipt of the notice, disputed the validity of the debt, or any portion thereof, the debt would be assumed to be valid by AAB, in violation of 15 U.S.C. § 1692g(a)(3).

47. The Notice failed to state that, if Plaintiff notified the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, AAB would obtain verification of the debt or a copy of a judgment against the consumer and a copy

6

of such verification or judgment will be mailed to the consumer by AAB, in violation of 15 U.S.C. § 1692g(a)(4).

48. The Notice failed to state that, upon Plaintiff's written request within the thirty-day period, AAB would provide the consumer with the name and address of the original creditor, if different from the current creditor, in violation of 15 U.S.C. § 1692g(a)(5).

49. The Notice failed to state that AAB was a debt collector attempting to collect a debt and that any information obtained would be used for that purpose, in violation of 15 U.S.C. § 1692e(11).

50. For AAB's violations of FDCPA, Plaintiff is entitled to her actual damages, plus statutory damages of up to $1,000, and attorney's fees and costs pursuant to 15 U.S.C. § 1692k.

WHEREFORE, the Plaintiff seeks statutory damages, actual, damages, and attorney's fees pursuant to 15 U.S.C. § 1692k; actual damages and attorney's fees and costs pursuant to Conn. Gen. Stat. § 42-110g; actual damages, statutory damages of $1,000, plus attorney's fees and costs pursuant to Conn. Gen. Stat. § 36a-648.

        PLAINTIFF, VIOLET BORDNER,

By: /s/ Hailey Gallant Rice
    Daniel S. Blinn ct02188
    dblinn@consumerlawgroup.com
    Hailey Gallant Rice ct29150
    hgrice@consumerlawgroup.com
    Consumer Law Group, LLC
    35 Cold Spring Rd., Suite 512
    Rocky Hill, CT  06067
    Tel. (860) 571-0408
    Fax. (860) 571-7457